IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

BARRY COVINGTON AND                        :
SHARON CONVINGTON, individual              :
property owners in the                     :
City of Rehoboth Beach,                    :
                                           :
    Appellants,                    :
                                           :        C.A. No.:  S16A-05-002-RFS
    v.                             :
                                           :
THE BOARD OF ADJUSTMENT OF                 :
THE CITY OF REHOBOTH BEACH,                :
DELAWARE, a Delaware                       :
municipal corporation,                     :
                                           :
    Appellee.                      :


## MEMORANDUM OPINION


Date Submitted:  November 9, 2016
Date Decided:  December 14, 2016


*Upon Appeal from the Decision of the Rehoboth Beach Board of Adjustment.*
*Affirmed.*


Eugene M. Lawson, Jr., Esq., The Lawson Firm, 402 Rehoboth Avenue, Rehoboth Beach, Delaware 19971, Attorney for Appellants

Daniel F. McAllister, Esq. and Glenn C. Mandalas, Esq., Baird, Mandalas & Brockstedt, 6 S. State Street, Dover, Delaware 19901, Attorneys for Appellee

**STOKES, J.**

**INTRODUCTION**

Presently before the Court is an appeal from a decision of the Rehoboth Beach Board of Adjustment ("BOA") brought by Barry T. Covington and Sharon N. Covington ("Appellants"). Appellants seek to reverse the BOA's decision to withhold a building permit that was in violation of Ordinance No. 0715-01. The Court **AFFIRMS** the decision of the BOA for the reasons discussed below.

**FACTS**

On June 19, 2015 the City of Rehoboth Beach Board of Commissioners (the "Commissioners") adopted Resolution Number 0615-01. The Resolution recommended and set for public hearing an ordinance intending to amend Chapter 270 of the Rehoboth Beach Code (the "Zoning Code"). On July 17, 2015, after a public hearing, the Commissioners adopted Ordinance No. 0715-01. The Ordinance amended the requirements for natural area size, floor area ratio, building lot coverage, rear yard size, and accessory buildings of residential lots in the City of Rehoboth Beach ( the "City" or "Rehoboth Beach").

These restrictions triggered a significant outcry among Rehoboth Beach residents and led to a vigorous debate within the community. Under Section 41A of the Rehoboth Beach City Charter (the "Charter"),[1] citizens may circulate petitions requesting the Commissioners to reconsider an ordinance or place it before the voters in a referendum. On August 21, 2015, dissatisfied residents presented petitions to the Commissioners. However, the petitions did not contain the requisite number of signatures. Subsequently, the citizens filed a Notice of Intention to Amend and, on September 14, 2015, presented additional petitions. On September 16, 2015, the City Manager issued a Certificate of Sufficiency to the Commissioners. The Commissioners

---

[1] Section 41A is a provision of general applicability; therefore, it applies to all types of ordinances, not just zoning ordinances. As a result, the pending ordinance doctrine was not codified within this section.

did not repeal Ordinance 0715-01, but rather set a referendum date of November 7, 2015. Immediately after setting the referendum date, notice was posted on the City's website stating that the Ordinance was "suspended and under review." Yet, the Rehoboth Beach Building Inspector ("Building Inspector") and the BOA continued to review applications for compliance as though the Ordinance was still in effect. On November 7, 2015, the voters chose to uphold the Ordinance.

On October 30, 2015, after the Commission had adopted the Ordinance, but before the referendum had been passed, the Appellants submitted a building permit application to construct a house with a pool at 105 St. Lawrence Street. The improvements the Covingtons sought to make to their property violated Ordinance 0715-01. On December 10, 2015, the Building Inspector denied the Appellants' application for the following reasons: the natural area did not meet the minimum requirements; the floor area ratio exceeded the maximum allowance; the structural area exceeded the maximum allowance; the rear setback was less than the minimum requirements; and the aggregate side yard setback did not meet the minimum requirements. In short, the application was denied because it did not meet the Zoning Code requirements as amended by Ordinance 0715-01. As a result, the Appellants appealed to the Rehoboth Beach Board of Adjustment ("BOA"), which affirmed the decision of the Building Inspector. The Appellants now appeal the BOA's decision to the Superior Court.

**STANDARD OF REVIEW**

The standard of review for appeals from a Board of Adjustment decision is limited to the correction of errors of law and a determination of whether substantial evidence exists in the record to support the Board's findings of fact and conclusions of law.[2] Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a

---

[2] *Janaman v. New Castle County Bd. of Adjustment,* 364 A.2d 1241, 1242 (Del. Super. Ct. 1976).

conclusion.[3] If the Board's decision is supported by substantial evidence, a reviewing court must sustain the Board's decision even if such court would have decided the case differently if it had come before it in the first instance.[4] "The burden of persuasion is on the party seeking to overturn a decision of the Board to show that the decision was arbitrary and unreasonable."[5] In its appellate review, the Superior Court after examining the record may "reverse or affirm, wholly or partly, or may modify the decision brought up for review."[6]

## DISCUSSION

### I. The Board of Adjustment's Motion to Dismiss

After both sides had submitted their opening briefs, the BOA filed a Motion to Dismiss, claiming that the City of Rehoboth Beach (the "City") is an indispensable party to the action, and that the Appellants' failure to join the City is a non-amendable defect warranting dismissal. The Appellants claim that the presence of the BOA in the case is sufficient to protect the interests of the BOA and the City. Further, Appellants argue that the BOA is represented by the City's attorney, so it is clear that the City is well-informed on this litigation.

The BOA's Motion to Dismiss is denied. Parties with a direct stake in the litigation at hand are called indispensable parties, and must be present in the case.[7] When a failure to join such parties will result in substantial prejudice to the absent interest, it is considered a non-amendable defect, which will require dismissal.[8] "This rule generally is not considered discretionary but is a fundamental question of jurisdiction, which cannot be waived by the parties

---

[3] *Miller v. Bd. of Adjustment of Dewey Beach*, 1994 WL 89022, at *2 (Del. Super. Ct. Feb. 16, 1994).
[4] *Mellow v. Bd. of Adjustment of New Castle County*, 565 A.2d 947, 954 (Del. Super Ct. 1988), *aff'd*, 567 A.2d 422 (Del. 1989).
[5] *Id*. at 556.
[6] 22 Del. C. § 328(c).
[7] *State Personnel Comm'n v. Howard*, 420 A.2d 135, 137 (Del. 1980).
[8] *Id.*

or disregarded by the appellate court, and the latter has no power to hear and determine a case unless all the parties directly affected by the judgment…are brought before it."[9]

Further, Superior Court Civil Rule 19 provides that all parties necessary for a fair adjudication shall be joined as parties to the case.[10] While Rule 19 is technically a trial rule, it has been extended to appeals of this Court.[11] Rule 19(b) states that when a Court is faced with an absent party "the Court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person thus being regarded as indispensable."[12] The dispositive issue regarding dismissal of this appeal is whether the City of Rehoboth is an indispensable party who will suffer substantial prejudice as a result of its exclusion from the case.

Here, the Court has determined that the City is not an indispensable party. The BOA is the only indispensable administrative party in an appeal from its decision. The Court in *Zoning Bd. Of Adjustment of New Castle County v. Dragon Run Terrace, Inc.* wrote,

> We think that while the Board is only an agency of the county, has no corporate existence and has no direct interest in the outcome of the litigation, it nevertheless represents the public interest in the protection and enforcement of the zoning regulations. *As the guardian of the public interest, it therefore has standing to defend its decision on appeal, particularly in view of the fact that it is the only indispensable party before the Superior Court.*[13]

---

[9] *Sussex Medical Investors, L.P. v. Delaware Health Resources Board*, 1997 WL 524065, at *2 (Del. Super. Ct. Apr. 8, 1997)(internal citations omitted).

[10] Super. Ct. R. 19; *Covey v. County Bd. of Adjustment of Sussex County*, 2002 WL 970469, at *2 (Del. Super. Ct. May 7, 2002).

[11] Super. Ct. Civ. R 1 ("These Rules shall govern the procedure in the Superior Court in the State of Delaware…"); *Covey* at *2 (holding that Rule 19 applied to an appeal to the Superior Court from the Sussex County Board of Adjustment); *Sussex Medical* at *2 (holding that Rule 19 applied to an appeal to the Superior Court from the Delaware Health Resources Board); *Liborio II, L.P. v. Artesian Water Co.,* 621 A.2d 200 (Del. Super. Ct. 1992)(holding that Rule 19 applied to an appeal in the Superior Court from the Public Service Commission).

[12] Super. Ct. Civ. R. 19(b).

[13] *Zoning Bd. of Adjustment of New Castle County v. Dragon Run Terrace, Inc.*, 9 Storey 175, 179 (Del. 1965)(emphasis added).

Further, in *Nepi v. Lammot* the Respondents moved to dismiss the case because the petitioners failed to join the citizens who had objected to the BOA decision.[14] The Court ruled that citizen objectors were not indispensable parties: "…it was not necessary for the petitioners to join as defendants those persons who appeared before the Board and who objected to petitioner's appeal from the action of the Building Inspector…It was likewise proper for the petitioner to name the Board as the defendant."[15] This case makes clear the Court's belief that the Board is an adequate defendant in this type of appeal.

While the City claims that this line of cases was overruled by the decision in *Hackett v. Bd. of Adjustment of the City of Rehoboth Beach*, the Court does not agree. *Hackett* concerned a property owner that had secured a building variance from the BOA, but had not been joined in the case.[16] This situation and the interests represented by the property owner are very different from the instant case. Here, the property owner in question has been joined. The City does not represent any interests analogous to those of the property owner in the *Hackett* case.

Even if the City was considered an indispensable party, as a result of its involvement in the appeal, the City is constructively before the Court. In *Protect Our Indian River v. Sussex County Board of Adjustment*, the Court discussed the idea of constructive appearance.[17] In that case, Harim sought to purchase property from PFG in order to operate a chicken processing plant.[18] To make its plan feasible, Harim petitioned the Sussex County Board of Adjustment for a special use exception.[19] Protect Our Indian River claimed that only the record property holder

---

[14] *Nepi v. Lammot*, 2 Storey 281, 283 (Del. Super. Ct. 1959).
[15] *Id*. at 285-86.
[16] *Hackett v. Bd. of Adjustment of City of Rehoboth Beach*, 794 A.2d 596, 597 (Del. 2002).
[17] *Protect Our Indian River v. Sussex County Bd. of Adjustment*, 2015 WL 4498971, at *12 (Del. Super. Ct. July 2, 2015).
[18] *Id.* at *3.
[19] *Id.* at *10.

(PFG) had standing to make such a request.[20] The Court held that under the doctrine of equitable conversion Harim did have standing to make the request, but also found that PFG was constructively before the Board.[21]

The Court named the following facts when finding that PFG constructively appeared before the Board: PFG and Harim were named in the application on its face and a signature was incorporated through the APS contract, during the process PFG maintained the status quo of the property, PFG authorized Harim to make the request, notice and information was provided to PFG by the Board at all critical stages of the process, and no objection was made by any of the appellants before the Board decided the request.[22] According to the Court,

> Harim and PFG's interests were united when the application was submitted to BOA …Overall, PFG was before BOA…Here, PFG constructively appeared in the appeal for previously stated reasons…Harim proceeded to request the special use exception with the support of PFG, essentially acting as if it was an agent for PFG in order to complete their intended transaction.[23]

The role that the City of Rehoboth has played in this appeal is similar to that of PFG. The City's Solicitor is serving as the BOA's counsel in this appeal. Therefore, the City cannot claim that it is unaware of the happenings of this case. Essentially, the BOA has been acting as an agent of the City. There are no secret interests of the City which the BOA cannot adequately represent. As a result, the City is constructively before the Court.

This argument is further buttressed by the idea that, when possible, an appeal should be decided on the merits rather than a technicality.[24] In *State Personnel Commission v. Howard,*[25] the Court stressed the importance of this idea:

---

[20] *Id.*
[21] *Id.* at *11-12.
[22] *Id.* at *12.
[23] *Id.*
[24] *State Personnel Commission v. Howard*, 420 A.2d 135, 137 (Del. 1980).
[25] The Superior Court called into question the *Howard* analysis in *Sussex Medical Investors, L.P. v. Delaware Health Resources Board,* but stated that it was "guided by the general holding of *Howard* that appellate courts

> Formerly, it was the general practice of appellate courts to dismiss appeals for failure to join as parties appellee litigants who would be directly affected by the appellate decision. However, the modern trend, developed in recent years in both state and federal courts, de-emphasizes the technical procedural aspects of appeals and stresses the importance of reaching and deciding the substantive merits of appeals whenever possible…The modern view has been adopted in Delaware…The determinative question is whether the appeal should be dismissed because sufficient prejudice flows to the unjoined parties to prevent their joinder at this stage of the appeal.[26]

The Court also explained that the purpose of this procedural requirement was to ensure that all parties who may be directly affected by the litigation had proper notice of the litigation.[27] Where adequate notice of the proceedings has been given, there is no need for the case to be dismissed as a result of the inadequate joinder.[28] The aforementioned facts regarding the BOA's representation by the City's lawyer demonstrate that there is no notice issue here. Thus, this case is analogous to *Howard* and *Moore* and, therefore, should not be dismissed based upon a mere technicality. The Court makes this determination within the bounds of Rule 19, and finds that the case may proceed in good conscience without joining the City of Rehoboth as a party. For the stated reasons, the Court denies the BOA's Motion to Dismiss.

## II. Applicability of the Pending Ordinance Doctrine

At the crux of the legal issue presented in this case is whether the pending ordinance doctrine applies to these facts. The pending ordinance doctrine, which has been adopted in

---

should 'decide the substantive merits of appeals whenever possible…'" The Court was unwilling to directly apply the *Howard* analysis because that case failed to take into account Superior Court Civil Rule 15 and 19. *Sussex Medical Investors, L.P. v. Delaware Health Resources Board,* 1997 WL 524065, at *3 (Del. Super. Ct. Apr. 8, 1997).

[26] *Id.* at 137-38 (internal citations omitted).

[27] *Id.* at 138.

[28] *Id.* (holding that all indispensable parties' interests were adequately represented because all three plaintiffs were represented by the same attorney and asserted identical interests in the trial below); *Moore v. Knowles*, 482 F.2d 1069, 1075 (5th Cir. 1973)("In this case the board's lawyer represented the defendants; he was paid from board funds; and the board's position was effectively presented before the District Court and this court. We find no substantial prejudice at this stage of the litigation and no reason to dismiss the case for this defect.").

Delaware,[29] provides that "a property owner is not entitled to obtain a building permit where the proposed construction would be prohibited under the terms of a pending ordinance."[30] Thus, once a zoning ordinance is "pending" it goes into effect, even though it has not been officially made law. The Commissioners need not have voted on the zoning ordinance for it to become effective. McQuillin on Municipal Corporations is informative:

> Rights of parties in this respect are to be determined under zoning laws in effect as of the time the use is undertaken rather than the zoning law in effect at the time when the application for the permit was made…A municipality may properly refuse a building permit for a land use repugnant to a pending zoning ordinance, even though the application is made when the intended use conforms to existing regulations, and even though the application is made a considerable time before the enactment of the pending ordinance, provided the municipality has not unreasonably or arbitrarily refused or delayed the issuance of a permit, and provided the ordinance was legally "pending" on the date of the permit application.[31]

The purpose behind this doctrine is to ensure that property owners are not able to bypass soon-to-be-enacted ordinances by filing building applications immediately before the law goes into effect. In *Chicago Title & Trust Co. v. Village of Palatine*, the Court explained:

> It would be utterly illogical to hold that, after a zoning commission had prepared a comprehensive zoning ordinance or an amendment thereto, which was on file and open to public inspection and upon which public hearings had been held, and while the ordinance was under consideration, any person could by merely filing an application compel the municipality to issue a permit which would allow him to establish a use which he either knew or could have known would be forbidden by the proposed ordinance, and by so doing nullify the entire work of the municipality in endeavoring to carry out the purpose for which the zoning law was enacted.[32]

---

[29] *Washington Greene Associates, Inc. v. Mayor of New Castle*, 1990 WL 1242522, at *2 (Del. Super. Ct. Nov. 5, 1990) (holding that the plaintiff must comply with the pending ordinance doctrine, but that the ordinance was not yet pending at the time the application was filed); *Wilmington Materials, Inc. v. Town of Middletown*, 1988 WL 135507, at *6 (Del. Ch. Dec. 16, 1988) (holding that the pending ordinance doctrine was unavailable because at the time of the application, there was no proposed zoning ordinance); *Raley v. Stango*, 1988 WL 81162, at *3 (Del. Ch. July 28, 1988) (acknowledging the existence of the pending ordinance doctrine, but not finding it to be applicable to the case at bar).

[30] *Raley v. Stango*, *supra*.

[31] 8 McQuillin Mun. Corp. §25:179:24 (3d. ed.).

[32] *Chicago Title & Trust Co. v. Village of Palatine*, 160 N.E.2d 697, 700 (Ill. App. 1059).

However, the courts are split on the question of when an ordinance becomes "pending," and Delaware courts have yet to speak on the issue. There are two accepted definitions: (1) an ordinance becomes pending when the proposed ordinance has been formally introduced by the City Council and the Council has given notice of public hearing,[33] or (2) the ordinance is pending when the City Council adopts a resolution to consider the amendment.[34] Underpinning either definition is the same policy concern—once there has been adequate notice by the Council that it intends to amend the zoning code, property owners should not be able to use their land in a way that will soon be prohibited simply by filing an application while the ordinance is under consideration.[35] Which definition would be applied by a Delaware court is irrelevant here because at the time Appellants filed their application, a public hearing already had been held by the Rehoboth Beach City Commissioners and the ordinance had been formally adopted.[36] Thus, either definition would be met. It is clear that the ordinance was pending on October 30, 2015 when the Appellants submitted their application.

It would be nonsensical to afford an ordinance that already had been adopted by the Commissioners and is only waiting approval by the City's voters less protection than an ordinance that is in the early stages of adoption. This is a reasonable level of protection to be given an ordinance that is in the final stages of adoption. Therefore, the law will stay in place until there has been resolution, here in the form of a referendum. Once the voters approved the ordinance on November 7, 2015, the ordinance applied retroactively to the date that it was first pending, long before the Appellants filed their application on October 30, 2015.

---

[33] *Boron Oil Co. v. Kimple,* 284 A.2d 744, 747 (Pa. 1971).
[34] *Chicago Title & Trust Co.,* 160 N.E.2d at 700.
[35] *Boron Oil Co.,* 284 A.2d at 747 (internal quotations omitted).
[36] On June 19, 2015 the Rehoboth Beach City Commissioners adopted the resolution setting a public hearing for July 17, 2015 to consider the ordinance in question. A public hearing was held on July 17, 2015, and the ordinance was adopted at that time.

To hold that the ordinance was completely invalid during the referendum process would undermine the policy underpinnings of the pending ordinance doctrine discussed above. Therefore, the language in the Rehoboth Beach Charter stating that the ordinance "shall be suspended from taking effect" during the Section 41A appeal process cannot be interpreted to mean that the ordinance was wholly invalidated during this period of time. While the ordinance may have been suspended, it was still valid and could be applied retroactively once the referendum had passed.

## CONCLUSION

This Court finds that the BOA's decision is supported by substantial evidence and free from legal error. Accordingly, the decision of the BOA is **AFFIRMED**.

**IT IS SO ORDERED**

/s/ *Richard F. Stokes*
Richard F. Stokes, Judge

Cc: Prothonotary
Eugene M. Lawson, Jr., Esq.
Daniel F. McAllister, Esq.
Glenn C. Mandalas, Esq.